UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EHW CONSTRUCTORS, J.V., et al., | CASE NO. C14-5270JLR |
| Plaintiffs, | ORDER GRANTING MOTION TO DISMISS |
| v. | |
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 302, | |
| Defendant. | |

## I.    INTRODUCTION

Before the court is Defendant International Union of Operating Engineers Local 302's ("the Union") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).  (Mot. (Dkt. # 10).)  The Union argues that the court lacks subject matter jurisdiction under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  (*See generally id.*)  The court has considered the motion, all submissions filed in support of the motion and in opposition thereto, the balance of the record, and the

ORDER- 1

1    applicable law.  In addition, the court heard the argument of counsel on August 21, 2014.

2    (*See* Dkt. # 25.)  Being fully advised, the court GRANTS the Union's motion and

3    DISMISSES this matter without prejudice.

## II.    BACKGROUND

5         On March 31, 2014, Plaintiffs EHW Constructors, J.V. ("EHW") and Nova

6    Group, Inc. ("Nova Group") (collectively, "Plaintiffs") filed a complaint requesting that

7    the court vacate an arbitration award.  (*See* Compl.  (Dkt. # 1).)  EHW is a joint venture

8    formed by three companies, one of which is Nova Group, to bid on the MCON P-990

9    Explosives Handling Wharf Project # 2 ("Project") and to perform the Project contract if

10   it was awarded to EHW.  (*Id.* ¶ 4.)  Nova Group is a U.S.-owned company that performs

11   boat operations for the Project and has "historically done [federal work] on a non-union

12   basis."  (*Id.* ¶ 5.)

13        The Naval Facilities Engineering Command ("NAVFAC") solicited bids for the

14   Project, awarded the Project contract to EHW on May 9, 2012, and ensures compliance

15   with the assistance of an Administration Contract Officer ("ACO"), Mona Carlson.  (*Id.*

16   ¶¶ 7-8, 10.)  Neither NAVFAC nor ACO Carlson is a party to this lawsuit.  (*See*

17   *generally id.*)

18        The Project contract includes a Project Labor Agreement ("PLA"), and also

19   incorporates the requirements of the Davis-Bacon Act, 40 U.S.C. §§ 3141-48, and the

20   Copeland Act, 40 U.S.C. § 3145 and 18 U.S.C. § 874, within its terms and conditions.

21   (Compl. ¶ 8.)  The PLA is a labor agreement to which both EHW and the Union are

22

1   signatories.  (*Id.*)  NAVFAC is not a party to the PLA.  (*Id.* ¶ 10.)  The PLA is limited to

2   construction work at the Project site.  (*Id.* ¶ 8.)

3         At the start of the Project, the parties to the Project contract determined that the

4   Jones Act required that a U.S.-owned company own and operate any vessels involved in

5   the Project.  (*Id.* ¶ 11.)  As a result, Nova Group, which is a U.S.-owned company,

6   handles operation of the boats involved in the Project.  (*Id.* )  Initially, Nova Group

7   understood that "Boat Work" was covered under the PLA.  (*Id.* ¶ 12.)  Accordingly, Nova

8   Group signed a letter of assent to be bound as an individual employer to the PLA for

9   construction work on the Project.  (*Id.* ¶ 13.)  Nova Group also paid wages and benefit

10  contributions at rates directed by the Union based on the understanding that Boat Work

11  was covered by the PLA.[1]  (*Id.*)  In addition, Nova Group deducted Union dues and fees

12  from the pay of employees doing Boat Work on the Project as a condition of employment

13  with Nova Group.  (*See id.*)

14        Plaintiffs' payroll records classified Boat Work as construction work under the

15  PLA.  (*Id.* ¶ 14.)  The Project contract between EHW and NAVFAC, however, did not

16  provide a Davis-Bacon Act classification for Boat Work.  (*Id.* ¶ 14.)  In December 2012,

17  ACO Carlson raised the issue of the appropriate classification of employees engaged in

18  Boat Work.  (*Id.* ¶ 15.)  Plaintiffs allege that the discrepancy between the Project contract

19  and payroll classification required Plaintiffs to initiate a conformance process under 48

20

21        _____

            [1] The Union, however, was not elected or designated by a majority of Project employees

22  to represent them.  (Compl. ¶ 12.)

ORDER- 3

1    C.F.R. § 22.406-3.  (Compl. ¶ 15.)  As a part of the conformance process, Plaintiffs, in

2    conjunction with ACO Carlson, submitted a Request for Authorization of Additional

3    Class or Rate, commonly referred to as an SF-1444. to the Department of Labor

4    ("DOL").  (*See id.* ¶¶ 15-16, Ex. 1 at 5.)  Nova, EHW, and NAVFAC worked together to

5    prepare the SF-1444 to submit to DOL.  (Nova Resp. (Dkt. # 14) at 4 ("At the Navy's

6    request, Nova prepared a conformance request [i.e., SF-1444] for boat work and

7    submitted it to EHW who, in turn, submitted the documentation to NAVFAC for review

8    before it went to DOL."); Compl. ¶ 16.)

9         The DOL found that Boat Work (i.e., Passenger Boat Operator, Push Boat

10   Operator, Deckhand) was not building or construction work and so Boat Work did not

11   require Davis-Bacon classification.  (*Id.* ¶ 17.)  As a result of DOL's determination, ACO

12   Carlson ordered Plaintiffs to cease requiring employees conducting Boat Work to join a

13   union or to remit union fees.  (*Id.* ¶ 23.)  Nova Group therefore announced that the work

14   in question was not covered by the PLA.  (Compl. Ex. 1 at 2.)  Nova Group also sent a

15   letter to the Union on May 31, 2013, disbanding itself from the Union and withdrawing

16   its recognition of the Union's jurisdiction over the employees in question.  (Nova Resp. at

17   5; *see* Compl. Ex. 1 at 2.)  Plaintiffs allege that failure to follow ACO Carlson's orders

18   could result in termination of the contract and possible prosecution under the Copeland

19   Act, 40 U.S.C. § 3145 and 18 U.S.C. § 874.  (Compl. ¶ 24.)

20        The Union disputes Plaintiffs' decision not to pay Boat Work according to Davis-

21   Bacon classifications.  After receiving Nova Group's May 31, 2013, letter, the Union

22   filed grievances on June 21 and August 12, 2013, arguing that Boat Work was covered by

1    the PLA.[2]  (*Id.* ¶ 25.)  The Union's grievances were joined for arbitration under the terms

2    of the PLA which provides for final and binding arbitration.  (*Id.* Ex. 1 at 2; Smith Decl.

3    (Dkt. # 13) Ex. 1 at 9 (stating in Article VII, Section 3, Step 3(a) that "[t]he decision of

4    the arbitrator shall be final and binding on all parties").)

5        A hearing was held on December 9 and 10, 2013, before Arbitrator Howell

6    Lankford.  (4/17/14 Black Decl. (Dkt. # 11) ¶ 7.)  The Union, EHW, and a representative

7    of NAVFAC were present and participated.  (*Id.*)  Nova Group made a special

8    appearance and participated.  (*Id.*)

9        The Arbitrator issued an Award on February 21, 2014.  (*Id.* ¶ 9, Ex. A; Compl. Ex.

10    1.)  The Arbitrator found that withdrawal of recognition of Boat Work as work covered

11    by the Davis-Bacon Act violated the PLA.  (Compl. ¶ 27.)  The Arbitrator found that

12    Nova Group and EHW improperly relied on the DOL decision that Boat Work was not

13    construction work because EHW, Nova Group, and NAVFAC had submitted a

14    "fundamentally flawed application" to the DOL such that the DOL's decision "cannot

15    excuse the withdrawal of recognition."  (4/17/14 Black Decl. Ex. A at 9-10; Compl. Ex. 1

16    at 9-10.)

17

18        [2] The Union also filed claims before the National Labor Relations Board ("NLRB").
(Compl. ¶ 25.)  Defendant's claims are presently pending before the NLRB, and so are

19    counterclaims filed by Plaintiffs.  (*Id.*)  On July 31, 2014, the NLRB issued a complaint against
Nova Group and EHW alleging that these entities engaged in unfair labor practices.  (8/8/14

20    Black Decl. (Dkt. # 24) ¶¶ 2-3, Ex. A.)  The Union has also filed a separate lawsuit with this
court requesting payment of fees, dues, and benefits contributions under the Employee
Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1), (f).  (*See* Compl.

21    ¶ 25; *see also Locals 302 and 612 of the Int'l Union of Operating Eng'rs Constr. Indus. Health
and Sec. Fund v. Nova Group, Inc., et al.*, Case No. C13-1485JLR (W.D.Wash.), Compl. (Dkt. #

22    1).)

1        In making his ruling, the Arbitrator described the flawed SF-1444 process as

2  follows:

> 3    DOL's administrative rules (and DOL's republication of those formal rules
> as a helpful checklist for contracting officers) make it clear that the SF-
> 4    1444 process requires just what it seems to require on the face of that form:
> signatures from the affected employees and union showing whether there is
> 5    agreement or disagreement with the proposed classification rate. Here,
> however, the form and the job descriptions were drafted unilaterally by the
> 6    Contractor with the approval of the Contracting Officer. The Union was
> never even advised of the intended DOL inquiry, and neither the employees
> 7    nor the Union were allowed to provide a characterization of their work or to
> comment on the accuracy of the rates or job descriptions drafted by the
> 8    Contractor.

> 9    It is important to note that the "agree/disagree" character of the SF-1444 is
> not an odd requirement.  Every wage & hour or class/comp procedure I
> 10   have ever encountered or heard of begins with an attempt to achieve a
> consensus job description; and no such procedure ever accepts the
> 11   employer's—or, for that matter, the employees'—unilateral description.  If
> the employees are represented by a union, that union is always involved in
> 12   the process.  If agreement can be achieved, then any rate or class decision
> can be based on the agreed consensus description without further fact-
> 13   finding; and if not, then the decisional part of the process cannot begin until
> the factual dispute has been resolved.  That principle is encapsulated here
> 14   by the second check box for the Contracting Officer:  if "the interested
> parties cannot agree . . ." then "A determination of the question by the wage
> 15   and hour division is therefore requested."   To repeat, it would be
> astonishing if the SF-1444 "Request for Authorization of Additional
> 16   Classification and Rate" did not solicit that information.  The failure to
> question the employees and to involve the Union was a fatal procedural
> 17   error; and both the "Agree" box checked by the Contractor on apparently
> behalf of the employees and their representative and the ". . . parties
> 18   agree . . ." box checked by the Contracting Officer were false and
> materially misleading.

19

20  (4/17/14 Black Decl. Ex. A at 9-10; Compl. Ex. 1 at 9-10.)  The Arbitrator also found that

the unilateral job descriptions that Defendants incorporated into the SF-1444 application

21

"were materially incorrect and misleading."  (4/17/14 Black Decl. Ex. A at 14; Compl.

22

1    Ex. 1 at 14.)  Accordingly, the Arbitrator found that Nova Group "[could not] justify its

2    withdrawal of recognition from [the Union] on the basis of the resulting DOL

3    determination."  (*Id.*)

4         In crafting an appropriate remedy, the Arbitrator deferred addressing "the Union's

5    broader argument—that the Davis-Bacon coverage and the DOL process do  not

6    determine the coverage of the PLA," and instead imposed an "immediate remedy"

7    requiring "the Contractor and the Union to revisit the SF-1444 process . . . [b]ecause the

8    Contractor's withdrawal of recognition was built on the results of the botched SF-1444

9    applications (which were substantially falsified both by the Contractor and the [ACO])."

10    (4/17/14 Black Decl. Ex. A at 16; Compl. Ex. 1 at 16.)  In addition, the Arbitrator

11    required Plaintiffs and Defendant jointly to request the replacement of ACO Carlson with

12    another ACO.  (Compl. ¶ 27.)  The Arbitrator also required Plaintiffs to make the Union

13    whole for any loss incurred as a result of the withdrawal of recognition of Boat Work

14    under the prior conformance process.  (*Id.*)

15         After detailing his "immediate remedy," the Arbitrator expressly "retain[ed]

16    jurisdiction in order to resolve issues that may arise in the interpretation and application

17    of the stated remedy . . . [and] to consider the Union's alternative theory of this case—

18    after further argument—if the dispute has not been resolved by the DOL processes."

19    (4/17/14 Black Decl. Ex. A at 18; Compl. Ex. 1 at 18.)

20

21

22

ORDER- 7

1    Plaintiffs have brought this suit to vacate the Arbitrator's Award.[3]  (*See generally*

2    Compl.)  The Union moves to dismiss Plaintiffs' complaint on grounds that the

3    Arbitrator's Award is not final.  (*See generally* Mot.)   Defendants respond that the

4    Award is final, and even if it is not final, the court should still review the Award based on

5    the exceptional circumstances of this case.  (*See generally* EHW Resp. (Dkt. # 12); Nova

6    Resp. (Dkt. # 14).)  The court now considers these dueling positions.

7                          **III.    ANALYSIS**

8    **A.    Standards**

9        Section 301 of the LMRA grants the court authority to review and enforce labor

10   arbitration awards.  *See* 29 U.S.C. § 185(a); *Gen. Drivers, Warehousemen & Helpers,*

11   *Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963); *Millmen Local 550, United*

12   *Bhd. of Carpenters & Joiners v. Well's Exterior Trim*, 828 F.2d 1373, 1374 (9th Cir.

13   1987); *Kemner v. Dist. Council of Painting & Allied Trades No. 36*, 768 F.2d 1115, 1118

14   (9th Cir. 1985) ("A suit to vacate or enforce compliance with an arbitration award can be

15   founded on section 301 of the LMRA.").  The arbitrator's award, however, must

16   ordinarily be final and binding before the court undertakes such a review.  *See Orion*

17   *Pictures Corp. v. Writers Guild of Am., W., Inc.*, 946 F.2d 722, 724 (9th Cir. 1991)

18   _____

19   [3] Plaintiffs claim that the Arbitrator's Award requires them to violate multiple applicable
20   rules and laws.  (Compl. ¶¶ 28-42.)  Specifically, Plaintiffs assert that fulfilling the Arbitrator's
     decision would require them to violate (1) the DOL classification under the Davis-Bacon Act
     (*Id.*. ¶ 32), (2) the ACO Order (*Id.* ¶ 32), (3) the Copeland Act (*Id.* ¶ 33), and (4) the National
21   Labor Relations Act (*Id.* ¶¶ 34-35).  Second, Plaintiffs claim that the Arbitrator's Award violates
     the essence of the contract by requiring remedies not permitted under the PLA.  (*Id.* ¶¶ 47-48.)
22   Third, Nova Group challenges the authority of the Arbitrator to resolve the Union's grievances
     because Nova Group contends the work was not covered by the PLA.  (*Id.* ¶¶ 52-54.)

("Generally a district court may review an arbitrator's rulings pursuant to section 301 of the LMRA only after there is a final award."); *Sheet Metal Workers' Int'l Ass'n, Local 206 v. R.K. Burner Sheet Metal Inc*., 859 F.2d 758, 760 (9th Cir. 1988) ("In general, a district court should only confirm a final and binding arbitration award."); *Millmen Local 550*, 828 F.2d at 1375.

This rule exists for sound reasons:

> To allow judicial intervention prior to the final award would contravene the fundamental federal labor policy of deference to contractual dispute resolution procedures, and would interfere with the purpose of arbitration: the speedy resolution of grievances without the time and expense of court proceedings. Moreover, interlocutory review of nonfinal arbitration awards would defeat the purpose of 28 U.S.C. § 1291 (1982) to avoid piecemeal litigation of a claim.

*Millmen Local 550*, 828 F.2d at 1375 (citations omitted); *see also Bensalem Maint., Ltd. v. Metro. Reg. Council of Carpenters*, No. 11-2233, 2011 WL 2633154, at *7 (E.D. Pa. July 5, 2011) (stating that the purposes of the final arbitration rule are "(1) to avoid 'piecemeal' or 'fragmented' litigation, and (2) to allow the parties to attempt to work out their remaining differences after a partial resolution") (citing *Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio & Machine Workers Local 610*, 900 F.2d 608, 611 (3d Cir. 1990)).

An arbitrator's decision is "final and binding" where the decision is "intended by the arbitrator to be a complete determination of the claims, including the issue of damages." *Millmen Local 550*, 828 F.2d at 1376 (discussing *Michaels v. Mariforum Shipping*, 624 F.2d 411, 413-14 (2d Cir. 1980)). By way of contrast, an award is not final if an arbitrator has "specifically left the resolution of the issues decided subject to further

negotiations of the parties and expressly reserved jurisdiction." *Id.* at 1376-77

(discussing *Pub. Serv. Elec. & Gas Co. v. Sys. Council U–2*, 703 F.2d 68, 69-70 (3d Cir.

1983)).  Further, "[w]here an arbitrator retains jurisdiction in order to decide a

substantive issue the parties have not yet resolved, this retention of jurisdiction indicates

that the arbitrator did not intend the award to be final." *Orion Pictures Corp.*, 946 F.2d at

724 (citation and internal quotation marks omitted).  Indeed, "[a]n arbitrator's ruling is

not final if there is a substantive task left for the arbitrator to perform in the proceeding,

even if not all of the parties agree that such further action is warranted." *Id.* at 725.

  As the Third Circuit and district courts within the Ninth Circuit have noted, it is

common practice for arbitrators to defer a portion of the determination in hopes that the

parties can resolve remaining differences on their own in the interim:

> It is entirely reasonable for an arbitrator to "call time out" during an
> arbitration in the hope that a partial resolution will inspire the parties to
> work out their remaining differences on their own, thereby avoiding the
> time and expense of additional arbitration.  But we must take care to ensure
> that parties do not use these "time outs" as an opportunity to rush to court,
> either to preserve what they have just won, or (more often) to forestall a
> process that is not turning out as they might have wished. If this is allowed,
> the arbitrator's time will only be spared, if at all, at the great expense of
> vastly prolonged and unnecessary litigation, which is of course precisely
> what arbitration exists to avoid.

*Union Switch*, 900 F.2d at 611; *see also Int'l Bhd. of Teamsters Local 959 v. Horizon*

*Lines of Alaska, LLC*, --- F. Supp. 2d ----, 2014 WL 2094145, at *3 (D. Alaska 2014);

*Hyatt Corp. v. Unite Here Local 5*, No. 11-00645 JMS/KSC, 2012 WL 652098, at *5 (D.

Haw. Feb. 29, 2012) (quoting *Union Switch*, 900 F.2d at 611).

1   Due to the "fundamental federal labor policy of deference to contractual dispute

2   resolution procedures" and the public policy against "piecemeal litigation of a claim,"

3   interlocutory review of a non-final arbitration award is permitted "[o]nly in the most

4   extreme cases."  *Millmen Local 550*, 828 F.2d at 1375; *see also Aerojet-General Corp. v.*

5   *Am. Arbitration Ass'n*, 478 F.2d 248, 250 (9th Cir. 1973) ("[J]udicial review prior to the

6   rendition of a final arbitration award should be indulged, if at all, only in the most

7   extreme cases.")[4]

8   **B.   The Arbitration Award Is Not Final**

9   The Union argues that the Arbitrator clearly, unequivocally, and repeatedly

10   retained jurisdiction on more than one issue related to both liability and remedy.  (Mot. at

11   7-10.)  The Union cites the following portions of the Arbitrator's ruling:

12   I will not now address the issue of whether or not a proper DOL
     determination that the work in question is not covered by Davis-Bacon
13   would justify the Employer's use of non-union employee to perform it.  But
     I will retain jurisdiction in order to preserve the ability to address that issue
14   if the remedy here fails to resolve the dispute.

15   *   *   *   *   *   *   *   *   *   *

16   Rather than addressing now the Union's broader argument—that Davis-
     Bacon coverage and the DOL process do not determine the coverage of the
17   PLA—the immediate remedy will require the Contractor and the Union to
     revisit the SF-1444 process.  I require this step because the Contractor's
18   withdrawal of recognition was built on the results of the botched SF-1444

19   ────────────────

20   [4] In its motion, the Union characterizes the issue as one involving the court's jurisdiction.
     (Mot. at 4-5.)  Nova Group asserts, however, that it is a prudential issue because the court may
     review non-final awards in "the most extreme cases."  (Nova Resp. (Dkt. # 14) at 6-7 (citing
21   *Millmen Local 550*, 828 F.2d at 1375, n.1).)  The distinction in this case, however, "is
     unimportant since the issue for determination . . . is the same however one may characterize it."
22   *Union Switch*, 900 F.2d at 611-12 (3d Cir. 1990); *see also Hyatt Corp.*, 2012 WL 652098, at *4,
     n.3 (citing *Union Switch*).

ORDER- 11

1   applications (which were substantially falsified both by the Contractor and
2   by the Contracting Officer).

3                              **********

4   The Contractor shall make available to the Union such work and payroll
    documents as are required for that discussion, and I will resolve any
5   resulting disputes.

6                              **********

7   If—as I do not expect—DOL declines to revisit the prevailing wage issue
    or if  DOL again finds the work to be outside the scope of the Davis-Bacon
8   Act, then, within 30 days of that decision by DOL, the Union may move to
    reopen this case, and I will schedule an opportunity for both parties to argue
9   in detail the Union's theory that DOL's decision, even if made in response
    to an accurate and proper SF-1444 filing, does not determine the inclusion
10  of these employees, or not, within the scope of the PLA and the Union's
    CBA.

11                             **********

12  I retain jurisdiction in order to resolve issues that may arise in the
    interpretation and application of the stated remedy.   And I retain
13  jurisdiction in order to consider the Union's alternative theory of this
    case—after further argument—if the dispute has not been resolved by the
14  DOL processes.

15  (Compl. Ex. 1 at 7, 16, 17, 18; 4/17/14 Black Decl. Ex. A at 6, 16, 17, 18.)  The court

16  agrees that the foregoing statements definitively indicate that the Arbitrator intended to

17  retain jurisdiction and did not intend his ruling to be a final or complete determination.

18  The Arbitrator directed the parties to first "revisit" the flawed DOL conformance process

19  and, pending the parties' compliance with this aspect of his ruling, he reserved ruling on

20  other substantive issues.  The Arbitrator's award is not final.

21       The Arbitrator here essentially deferred the resolution of certain substantive issues

22  and called a "time out" so that the parties could revisit the faulty conformance process

1    and resubmit an appropriate SF-1444 application.  The transparent goal or "hope" of this

2    strategy was "that a partial resolution w[ould] inspire the parties to work out their

3    remaining differences on their own, thereby avoiding the time and expense of additional

4    arbitration."  *See Hyatt Corp.*, 2012 WL 652098, at *5 (quoting *Union Switch*, 900 F.2d

5    at 611).  As with other courts that have faced similar situations, this court "must take care

6    to ensure that the parties do not use th[is] 'time out[]' as an opportunity to rush to

7    court, . . . to forestall a process that is not turning out as they might have wished."  *Id.*  To

8    permit interlocutory review would defeat the purpose of the "time out" and the arbitration

9    process itself through unnecessary litigation.  *See id.*  This the court will not do.

10          Plaintiffs nevertheless argue that the portion of the Award concerning the DOL

11   ruling is beyond the scope of the issues that the parties formally presented to the

12   Arbitrator and that the Award is final as to those issues.  (EHW Resp. (Dkt. # 12) at 10-

13   12.)  Plaintiffs assert that the parties stipulated to the following issue for arbitration:  "Did

14   the Contractors violate the PLA by utilizing non-union personnel to perform Boat Work

15   on or after June 1, 2013, and if so, what is the appropriate remedy?"  (*Id.* at 10; *see also*

16   Compl. Ex. 1 at 2.)  According to Plaintiffs, the Arbitrator fully answered this issue

17   because he found that Plaintiffs "violated the PLA by utilizing non-union personnel [to

18   perform Boat Work] on or after June 1, 2013."  (Compl. Ex. 1 at 18; EHW Resp. at 10.)

19   He also ordered Plaintiffs to make the employees and the Union whole for any losses

20   caused by the violation.  (Compl. Ex. 1 at 17-18.)  Therefore, in the issues formally

21   presented by the parties, Plaintiffs characterize the Award as final.  (*See* EHW Resp. at

22   10-11.)

1    Plaintiffs, however, ignore the interim nature of the Award when read in context.

2   Plaintiffs are correct that the Arbitrator (1) ruled that Plaintiffs could not rely upon the

3   outcome of the flawed DOL conformance process to justify and (2) ordered Plaintiffs to

4   make the Union and the affected employees whole.  Nevertheless, this remedy is plainly

5   provisional because the Arbitrator postponed addressing the broader issue of Plaintiffs'

6   liability under the PLA notwithstanding a DOL determination that Boat Work is not

7   covered under the Davis-Bacon Act.  The Arbitrator postponed reaching this broader

8   issue because the outcome of the issue is contingent upon DOL's ruling following a

9   renewed conformance process that is based on a corrected and accurate SF-1444 form.  If

10   DOL were to reconsider and reverse its earlier determination after the parties revisit the

11   conformance process, the Arbitrator would not need to reach the Union's broader issue.

12   It would be moot.  Neither the parties nor this court, however, may assume away the

13   possibility that DOL will not change its position.  If DOL were to reconfirm its prior

14   ruling that Boat Work is outside the scope of the Davis-Bacon Act, the Arbitrator would

15   be required to reach the broader issue presented by the Union concerning Plaintiffs'

16   liability under the PLA.  Indeed, the Arbitrator makes clear that if DOL were to

17   reconfirm its earlier ruling, then he would "schedule an opportunity for both parties to

18   argue in detail the Union's theory that DOL's decision, even if made in response to an

19   accurate and proper SF-1444, does not determine the inclusion of these employees, or

20   not, within the scope of the PLA and the Union's CBA."  (*Id.* at 18.)  If Plaintiffs then

21   prevail in defeating the Union's theory on the broader issue after DOL has reaffirmed its

22   prior decision in response to an accurate SF-1444, there would no longer be any

ORDER- 14

1  justification to preserve the Arbitrator's initial ruling that Plaintiffs must make the

2  employees and the Union whole.  Thus, viewed in the context of the possible differing

3  outcomes from DOL, the Arbitrator's initial "make whole" ruling is clearly provisional

4  pending the parties' compliance with his directive to revisit the DOL conformance

5  process and submit a revised SF-1444.[5]

6        In any event, under the LMRA, the arbitrator's view of the scope of his or her

7  powers and of the issues submitted to him or her receives judicial deference.  *Sheet Metal*

8  *Worker's Int'l Ass'n Local Union No. 359 v. Madison Indus.,* 84 F.3d 1186, 1190 (9th

9  Cir. 1996); *Park Concrete, Inc. v. Cunningham*, 866 F.2d 283, 285 (9th Cir. 1989).  "An

10 arbitration award must be confirmed as long as the arbitrator is *even arguably* . . . acting

11 within the scope of his authority."  *United Food & Commercial Workers Intern. Union,*

12 *Local 588 v. Foster Poultry Farm*s, 74 F.3d 169, 173 (9th Cir. 1995) (internal quotations

13 and citation omitted; italics in original) (quoting *Van Waters & Rogers, Inc. v. Int'l Bhd.*

14 *of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.*, 56 F.3d 1132, 1136 (9th

15 Cir. 1995)).  The Union argues, and the court agrees, that the court also should identify

16 the scope of the stipulated issue not just from the issue statement the parties initially

17 presented to the Arbitrator, but also from the parties' interpretation of that issue as

18 conveyed at the Arbitration hearing and in the parties' briefs to the Arbitrator.  (Reply

19 (Dkt. # 15) at 4-5.)  Indeed, Plaintiffs presented the issue of the DOL's ruling as a

20

21        [5] The context of the Award's remedies of course would also include the numerous times

22 that the Arbitrator expressly and unequivocally stated that he was reserving jurisdiction to
   resolve remaining and lingering issues as quoted in the text above.

1    defense to the Union's claims both at the Arbitration hearing and in their post-hearing

2    brief.  (5/9/14 Black Decl. (Dkt. # 16) Ex. A at 9, Ex. B at 21-23.)  Accordingly, the

3    Arbitrator's initial ruling focuses on disentangling and considering this defense, while

4    reserving consideration of the Union's primary theory of liability pending "further

5    argument—if the dispute has not been resolved" based on the Arbitrator's initial ruling.

6    (Compl. Ex. 1 at 18.)

7           Thus, the court concludes that the Arbitrator's Award is not final and therefore not

8    presently subject to judicial review unless the facts here represent a "most extreme case"

9    warranting interlocutory review and an exception to the finality rule.  *Aerojet-General*

10   *Corp.*, 478 F.2d at 250; *see also Pac. Reinsur. Mgmt. Corp.*, 935 F.2d at 1022.  Plaintiffs

11   have asserted that such an exception is warranted here, and the court considers this issue

12   next.

13   **C.     The Arbitration Award Is Not a Most Extreme Case Justifying Interlocutory**
         **Review**

14          Plaintiffs argue that "the unusual circumstances in this case warrant immediate

15   review" even if the court finds the Arbitrator's Award is not final.  (EHW Resp. at 2.)

16   According to EHW, there are several aspects of the Arbitrator's Award that make this

17   case extreme.  In particular, EHW asserts that aspects of the Arbitrator's Award

18   contravene applicable laws and regulations.  (*Id.* at 14-16.)  First, EHW contends that

19   dismissal of this case would permit the Arbitrator to "improperly impose himself into the

20   [DOL] wage determination process."  (*Id.* at 15.)  Second, EHW argues that dismissal is

21   improper because the arbitration award, in its view, "invade[s] the NLRB's jurisdiction

22

1  on representational issues." (*Id.*)  Third, EHW argues that it faces potential "action [that]

2  could include withholding payments, debarment and/or termination of the contract" by

3  NAVFAC should EHW comply with the Arbitration Award because ACO Carlson

4  interprets compliance as a violation of the Copeland Anti-Kickback Act.  (*Id.*)  Fourth,

5  EHW argues that dismissal of this case "will unnecessarily [cause] delay" and "greater

6  expense."  (*Id.* at 15.)  Nova Group advances similar arguments.  (*See* Nova Resp. at

7  12-14.)

8        Just as "courts will not enforce contracts requiring the performance of an illegal

9  act," they "cannot enforce an arbitrator's award if it requires the performance of an illegal

10  act."  *Am. Postal Workers Union v. U.S. Postal Serv.*, 682 F.2d 1280, 1286 (9th Cir.

11  1982).  Normally, courts defer to the "arbitrator's factual determinations and legal

12  conclusions . . . so long as [the award] draws its essence from the collective bargaining

13  agreement."  *Carpenters' Local Union No. 1478 v. Stevens*, 743 F.2d 1271, 1275 (9th

14  Cir. 1984) (citing *Broadway Cab Coop. v. Teamsters & Chauffeurs Local Union No. 281*,

15  710 F.2d 1379, 1382 (9th Cir.1983)).  An arbitrator's award, however, "forfeits this

16  deference if it violates law or explicit, well-defined and dominant public policy."  *Id.*

17  (citing *George Day Construction Co. v. United Bhd. of Carpenters and Joiners*, 722 F.2d

18  1471, 1477 (9th Cir. 1984)).  Plaintiffs, however, have not demonstrated that the Award

19  would require them to violate any law or regulation.  However, even assuming for the

20  sake of argument that the Award is inconsistent with one of the laws or regulations cited

21  by Plaintiffs, Plaintiffs must still make the case that the Arbitrator's legal error, if any,

22  constitutes a "most extreme case" warranting interlocutory review.  *See Millmen Local*

1   *550*, 828 F.2d at 1375; *Aerojet-General Corp.*, 478 F.2d at 250.  They have not done so.

2   The court considers each of Plaintiffs' arguments in turn.

3       1.  DOL Conformance Process

4       First, the Arbitrator's Award does not contravene the DOL's wage determination

5   process.  On the contrary, his decision requires Plaintiffs to comply with DOL rules by

6   revisiting the SF-1444 conformance process and fixing prior procedural and substantive

7   errors.  In this dispute, the Arbitrator found that "the Navy's Contracting Officer utterly

8   failed in her exercise of [oversight] responsibility," and that this failure resulted in

9   procedural and substantive errors in the SF-1444 conformance process.  (Compl. Ex. 1

10  at 8.)  The ACO submitted documents to the DOL suggesting a consensus among all

11  parties on the appropriate classification under the Davis-Bacon Act when no such

12  consensus existed because neither Plaintiffs nor the ACO consulted the Union or the

13  effected employees.  (*Id.* at 8-10.)  The Award requires the parties to collaborate to

14  correct these errors.  (*Id.* at 17-18.)

15      Contrary to Plaintiffs' assertions, revisiting the conformance process will not

16  violate DOL's rules.  Rather, the renewed SF-1444 conformance process will correct

17  what the Arbitrator determined was a violation of those rules.  If there is no existing wage

18  determination for a class of laborers, DOL regulations require the contracting officer to

19  take different actions depending upon whether "the contractor and the laborers . . . or

20  their [union] representatives, and the contracting officer agree" or do not agree.  *Compare*

21  29 C.F.R. § 5.5(a)(1)(ii)(B) ("If [all parties] agree on the classification and wage rate . . . ,

22  a report of the action taken shall be sent by the contracting officer to the Administrator of

1    the Wage and Hour Division.") *with* 29 C.F.R. § 5.5(a)(1)(ii)(C) ("In the event the

2    [parties] do not agree on the proposed classification and wage rate . . . , the contracting

3    officer shall refer the questions, including the views of all interested parties . . . to the

4    Administrator for determination."); *see also and compare* 48 C.F.R. § 52.222-6(c)(2)

5    *with* 48 C.F.R. § 52.222-6(c)(3); *see also and compare* 48 C.F.R. § 22.406-3(c)(1) *with*

6    48 C.F.R. § 22.406-3(c)(2). Here, the Arbitrator found that ACO Carlson submitted a

7    "substantially falsified" and "botched" SF-1444 form indicating agreement even though

8    she did not consult the employees or their union representatives, in clear violation of

9    DOL's rules.[6]  (Compl. Ex. 1 at 16.)  The Award simply requires the parties to correct

10   this violation.[7]

11   _____

12   [6] In addition to the specific guidance provided in the applicable federal regulations cited
     above, and as the Arbitrator noted in his Award, DOL also provides the same guidance in
13   Chapter 7 of the *DOL Prevailing Wage Resource Book*. (*See* Compl. Ex. 1 at 8.)  Chapter 7 is
     entitled "Davis-Bacon Additional Classifications Process (Conformances)" and states: "In the
14   event the contractor, the laborers or mechanics to be employed in the classification or their
     representatives, and the contracting officer do not agree on the proposed classification and wage
15   rate . . . , the contracting officer shall refer the questions, including the views of all interested
     parties and the recommendation of the contracting officer, to the Administrator for a
16   determination." (*See* Compl. Ex. 1 at 8 (quoting U.S. Dep't of Labor, *Prevailing Wage Resource
     Book* (Mar. 2014), http://www.dol.gov/whd/recovery/pwrb/toc.htm  (last visited Aug. 27, 2014)
17   (providing link to pdf copy of Chap. 7, entitled "Davis-Bacon Additional Classifications Process
     (Conformances)") (quotation found in Chap. 7 at 1).)  Further, the Arbitrator also noted that
18   DOL provides the following explicit directive to Contractors on its website:  "Contractors must
     request <u>employees</u>, if present, or their designated representative, to sign block 16 noting the
19   employee's concurrence or disagreement with the contractor's proposed wage and benefit
     rate. . . . The 'designated representative' may be a union representative; however, it cannot be the
20   contractor's representative or personnel officer." (*See* Compl. Ex. 1 at 11, n.12 (quoting U.S.
     Dep't of Labor, *Wage and Hour Division (WHD), Requesting Additional/Unlisted Classifications
21   (Conformance) Procedures*, http://www.dol.gov/whd/recovery/dbsurvey/conformance.htm (last
     visited Aug. 27, 2014) (underlining in original).)

22   [7] The Arbitrator makes clear that he will respect whatever conclusion the DOL ultimately
     reaches following submission of a revised SF-1444 form. (*See* Compl. Ex. 1 at 18.)  The

1    EHW implies that the Arbitration Award is contrary to DOL's process for

2    appealing wage classifications.  (EHW Resp. at 14 (citing generally 29 C.F.R. Part 7,

3    §§ 7.1-7.11).)  EHW implies that because the Union did not appeal the wage

4    classification as provided for in DOL's regulations, the Arbitrator erred by refusing to

5    allow Plaintiffs to rely on the DOL ruling.  (*See id.*)  At the hearing, counsel for the

6    Union asserted that the Union's failure to appeal the DOL ruling was due at least in part

7    to Plaintiffs' failure to timely inform the Union that Plaintiffs had initiated the SF-1444

8    conformance process in the first place.

9    In any event, the Award does not appear to be contrary to DOL's regulations

10   concerning reconsideration or appeal of the wage classification.  The Union is not in a

11   position to appeal the classification to the Administrative Review Board because the

12   regulations provide that a party must first seek reconsideration from the Administrator.

13   Specifically, the applicable regulations state that "[a]ny interested person . . . can petition

14   for review" of an administrative officer's wage determination by the Administrative

15   Review Board, but only "after appropriate reconsideration."  *See* 29 C.F.R. § 7.2.  The

16

17   Arbitrator acknowledges that "[i]f the Contractor properly invoked DOL's wage determination
     procedure, then the PLA certainly gives [him] no jurisdiction to overturn the DOL's

18   determination."  (*Id.* at 7.)  The Arbitrator requires the parties to revisit the process because it
     may be dispositive of their dispute.  As the Arbitrator states, "[i]f DOL revisits the prevailing

19   wage issue and either finds that [] it had had already established Davis-Bacon prevailing rates for
     this work or if DOL establishes new Davis-Bacon prevailing rates for the work," there would be

20   no further need for arbitration on this issue.  (*Id.* at 18.)  Such a result would require Plaintiffs to
     pay prevailing wages to employees performing Boat Work.  (*See id.*)  If DOL does not

21   reconsider its prior decision, or upon reconsideration finds the Boat Work to "be outside the
     scope of the Davis-Bacon Act," then the Arbitrator has stated he will defer to that decision and

22   consider the Union's broader argument that the PLA applies to Boat Work notwithstanding the
     Department's decision not to classify the work under the Davis-Bacon Act.  (*Id.*)

1  requirement to seek reconsideration from the Administrator as a prerequisite to an appeal

2  before the Administrative Review Board is repeated in section 1.9 of 29 C.F.R:

> Any interested person may appeal to the Administrative Review Board for
> a review of a wage determination or its application made under this part,
> after reconsideration by the Administrator has been sought pursuant to § 1.8
> and denied.

29 C.F.R. § 1.9.  Section 1.8 provides in turn that "[a]ny interested person may seek

reconsideration of a wage determination issued under this part or of a decision of the

Administrator regarding application of a wage determination."  29 C.F.R. § 1.8.[8]  Thus,

under DOL's regulations, either the Union or Plaintiffs, or the parties jointly, can petition

for reconsideration of the prior wage classification.

Thus, contrary to EHW's assertion, the Arbitrator's Award appears to be entirely

in sync with DOL's regulations.  The Award requires the parties, in substance, to seek

reconsideration of the Administrator's prior wage classification, but to rely on a revised

SF-1444 that is substantively accurate and created in a manner that complies with DOL's

regulations.  Indeed, the Arbitrator specifically states that he does "not use the terms

'revisit,' 'appeal,' or 'initiate,' etc. in any technical sense" with respect to revised SF-

1444 process.  (Compl. Ex. 1 at 17, n.20.)  Rather, he expressly directs the parties "to

invoke DOL's authority to address the Davis-Bacon prevailing wage rate issue on the

merits, under whatever process title."  (*Id.*)  The court can discern nothing in this

---

[8] Section 1.8 further provides that "[s]uch a request for reconsideration shall be in writing accompanied by a full statement of the interested person's views and any supporting wage data or other pertinent information," and that "[t]he Administrator will respond within 30 days of receipt thereof, or will notify the requestor within the 30-day period that additional time is necessary."  29 C.F.R. § 1.8.

1   requirement that is at odds with DOL's process or its regulations for seeking

2   reconsideration of or appealing the wage classification.  Contrary to Plaintiffs'

3   arguments, the Award does not seek to undermine but rather to support and require the

4   parties to comply with DOL regulations.

5         Even if the Arbitrator's Award was contrary to DOL's established appeal process

6   in some manner, Plaintiffs have failed to demonstrate that these circumstances represent

7   "a most extreme case" warranting interlocutory review.  The mere fact that an interim

8   arbitration award may be in error in some respect does not render the award an extreme

9   case warranting interlocutory review.  Even if the Arbitrator's Award is in error with

10   respect to DOL's ruling or impinges on DOL's procedures in some manner, the Award's

11   requirement that the parties submit a revised SF-1444 form to DOL that complies with

12   the applicable regulations and eliminates prior misrepresentations does not represent  a

13   "most extreme case."

14         The Award also requires both Plaintiffs and Defendants to request that the Navy

15   assign a new ACO to the Project.[9]  The Award explicitly permits Plaintiffs to "make it

16   clear that [they ask for a new ACO] under the duress of this Award."  (*Id.* at 17.)  The

17   parties must request a new ACO, at least for the renewed SF-1444 conformance process,

18   because the Arbitrator found that ACO Carlson had failed to fulfill her role and "there is

19

20

21

22

    [9] The Arbitrator is aware that switching the ACO is a decision for the Navy.  He merely requires the parties to request a change.  (*See* Compl. Ex. 1 at 18.)  Indeed, at the hearing, the parties indicated that the Union had sent a letter to the Navy, which contained at least some input from Plaintiffs, requesting a replacement for ACO Carlson, but that the Navy has declined to reassign the position.  (*See* Minute Entry (Dkt. # 25).)

1  no good reason . . . to conclude that [ACO Carlson's role] was done in good faith." (*Id.*)

2  This requirement is not an extreme circumstance.  Rather, the requirement to request a

3  new ACO is clearly intended to deescalate tension among the parties as the Arbitrator

4  tries to guide them toward resolution of their dispute.  His intention—deescalation—

5  conforms to the underlying purposes of arbitration.   For these reasons, the court finds

6  that the Arbitrator's Award regarding DOL's determination does not constitute a "most

7  extreme case" warranting interlocutory review.

8       2.  NLRB Rulings

9       Second, the Arbitration Award does not, as Plaintiffs argue, "invade the NLRB

10  jurisdiction on representational issues." (*See* EHW Resp. at 15.)  The National Labor

11  Relations Act explicitly permits the Board to prevent unfair labor practices affecting

12  commerce and provides that the Board's power is "not affected by any other means of

13  adjustment or prevention that has been or may be established by agreement, law, or

14  otherwise."  29 U.S.C. § 160(a).  As a result, the NLRB would be entirely within its right

15  to overrule, or defer to, the Arbitrator on representational issues.  *See, e.g., Carey v.*

16  *Westinghouse Elec. Corp.*, 375 U.S. 261, 270-71 (1964).  "'There is no question that the

17  Board is not precluded from adjudicating unfair labor practice charges even when they

18  might have been the subject of an arbitration proceeding and award.'"  *Id.* (quoting *Int'l*

19  *Harvester Co.*, 138 N.L.R.B. 923, 925-926).  The Board may, however, "'respect an

20  arbitration award and decline to exercise its authority . . . if to do so will serve the

21  fundamental aims of the [National Labor Relations] Act,'" namely by encouraging

22  arbitration in order to reduce "industrial strife."  *Id.* (quoting *Int'l Harvester*, 138

1   N.L.R.B. at 925-26); *see also Garcia v. NLRB.*, 785 F.2d 807, 809 (9th Cir. 1986) ("The

2   Board has authority . . . to adjudicate unfair labor practices.  It also has broad discretion

3   to respect an arbitration award if to do so serves the fundamental purposes of the

4   [NLRA].").

5          As relevant authorities indicate, the NLRB can overrule the arbitrator on

6   representational issues, but that power does not preclude the arbitrator from reaching

7   representational issues when they are presented to him prior to an NLRB ruling.[10]

8   Indeed, one fundamental purpose of the National Labor Relations Act is "to promote

9   industrial stability by encouraging dispute resolution through a mutually agreeable

10  arbitration process."  *Garcia*, 785 F.2d at 809.

11         The NLRB defers to arbitrators on representational issues unless a party can show

12  defects in the arbitration process.  The NLRB places the burden on the party "arguing

13  against deferral to demonstrate defects in the arbitral process or award."  *Id.*  (citing *Olin*

14  *Corp.*, 268 NLRB 573, 574 (1984)).  "'[U]nless the award is palpably wrong, i.e., unless

15  the arbitrator's decision is not susceptible to an interpretation consistent with the Act,"

16  the NLRB will defer to the arbitrator.  *Id.* (quoting *Olin*, 268 NLRB at 574).  As a result,

17  it would not be proper for this court to say that the Arbitration Award invades the

18  ─────────────────

19         [10] Plaintiffs claim that they did not present representational issues to the Arbitrator and
    that the Arbitrator did not have authority to reach the issue under the PLA.  The court need not
20  reach these arguments because, even if true, they do not present extreme circumstances
    warranting immediate judicial review.  Plaintiffs' arguments may be appropriate upon issuance
21  of a final arbitration award.  The only argument the court needs to consider here is whether the
    arbitration of a representational issue is contrary to law and thus creates "a most extreme case"
22  warranting immediate judicial review.  As discussed in the text above, the court concludes that it
    does not.

1    NLRB's jurisdiction when the NLRB itself often defers to arbitrators and has not yet

2    ruled.

3         If the NLRB had issued a decision contrary to the Award regarding

4    representational issues, the court could not enforce the Award and contravene the NLRB

5    ruling.  *See Stevens*, 743 F.2d 1275-76 (9th Cir. 1984) (ruling that an arbitration award

6    that is inconsistent with a previous ruling of the NLRB is unenforceable); *Cal. Pac. Med.*

7    *Ctr. v. Serv. Emps. Int'l Union*, 300 F. App'x 471, 472-73 (9th Cir. 2008) (reversing an

8    arbitrator's award when the "only logically possible" reading of the arbitrator's decision

9    conflicted with an NLRB ruling).  Plaintiffs, however, do not point to a contrary decision

10   by the NLRB.  Rather, they essentially raise the possibility that the NLRB might, in

11   reaching a decision in the cases before it, determine that the Arbitrator's Award was

12   contrary to the National Labor Relations Act.[11]  The mere possibility that the NLRB

13   might overrule the Arbitrator on representational issues is not an extreme circumstance

14   warranting immediate judicial review.  *See Millmen*, 828 F.2d at 1376.

15

16

17   _____

18        [11] The court notes that the prosecutorial arm of the NLRB recently issued a complaint
     against Defendants for unfair labor practices with respect to the Union and the PLA.  (*See*
19   Request (Dkt. # 23) Ex. 1.)  The court recognizes that the filing of a complaint is not the same as
     the issuance of a ruling by the Board.  Nevertheless, the issuance of the complaint would seem to
20   undermine Defendants' implicit position that the NLRB is likely to issue a ruling contrary to the
     Arbitrator's Award.
21        Defendants bring the NLRB's complaint to the court's attention in their Request for
     Judicial Notice.  (*See id.*; 8/8/14 Black Decl. (Dkt. # 24).)  Judicial notice of the NLRB
22   complaint is appropriate under the Federal Rule of Evidence 201(c)(2) and (e).  *See* Fed. R. Evid.
     201(c)(2) and (e).

1    3.   Possibility of Copeland Act Violations

2        Third, Plaintiffs also argue this case is exceptional due to correspondence received

3    from ACO Carlson regarding potential Copeland Act violations.  (EHW Resp. at 15-16;

4    Nova Resp. at 13-14.)  ACO Carlson has indicated that requiring union membership or

5    deducting wages from the employees performing Boat Work may violate the Copeland

6    Anti-Kickback Act.  The Copeland Act imposes civil and criminal penalties for acts that

7    require a person "employed in the construction, completion, or repair of any public

8    building . . . to give up any part of the compensation to which he is entitled under his

9    contract of employment."  18 U.S.C. § 874.

10       Plaintiffs do not articulate why the Award requires a violation of the Copeland

11   Act.  The Arbitration Award requires that "both the employees and the Union itself must

12   be made whole for any losses caused by the Contractor's withdrawal of recognition."

13   (Compl. Ex. 1 at 17.)  The Arbitration Award does not, however, specifically direct

14   Plaintiffs to deduct from employees' wages to pay union dues to the Union.  The

15   Arbitrator's opinion instead directs EHW to make the employees and the Union whole

16   for the withdrawal of recognition.  (*Id.* at 17-18.)  The Arbitrator states, in relevant part,

17   that "*the Contractor* shall make the Union for whole [sic] all amounts owed to it under

18   the CBA as administered by these parties before the improper withdrawal of

19   recognition."  (*Id.* at 18 (emphasis added)).  Indeed, the Arbitrator specifically notes that

20

21

22

ORDER- 26

1    "[i]f the Contractor is concerned about Copeland Act issues, the Contractor may pay

2    these amounts out of its own pocket pending the new DOL decision."  (*Id.*)[12]

3           Moreover, the Supreme Court has addressed the issue of the Copeland Act's

4    application to union activities, finding that the broad language of the Act was not

5    intended to apply to union dues.  *See United States v. Carbone*, 327 U.S. 633, 637 (1946).

6    Although the language of the Copeland Act is broad, "not every person or act falling

7    within the literal sweep of the language of the Copeland Act necessarily comes within its

8    intent and purpose."  *Id.*  Relevant here, "[t]here is nothing in the legislative history to

9    support the thesis that the statue was intended to affect legitimate union activities."  *Id.* at

10   639.  Nor was the statute "intended to be used to punish unlawful acts, including those

11   committed by union officials in violation of union rules, that are not in the nature of

12   kickbacks."  *Id.*  Furthermore, a federal regulation also provides that the list of

13   permissible payroll deductions not subject to the Copeland Act includes "any deductions

14   to pay regular union initiation fees and membership dues" provided for in a collective

15   bargaining agreement.  *See* 29 C.F.R. § 3.5(i).  To the extent that Plaintiffs are worried

16   that deductions for union dues are unlawful, *Carbone* and the foregoing federal

17   regulations should resolve their concerns.[13]

18   _____

19        [12] The Arbitrator further notes that "it was the Contractor's false entry and materially
20   misleading job descriptions that caused this problem, and it is the Contractor that must bear any
     resulting financial burden."  (Compl. Ex. 1 at 18.)

21        [13] There is some possibility that if payments to the Union eventually end up in the hands
22   of contractors, those payments might constitute a kickback under the Davis-Bacon Act and its
     regulations.  *See* 40 U.S.C. § 3142(c)(1); *see also Int'l Bhd. of Elec. Workers, Local 357 v.*

1    In any event, even if Plaintiffs have a legitimate concern about Copeland Act

2  violations, Plaintiffs could make the payment themselves without deducting that amount

3  from employee wages—as suggested by the Arbitrator.  (*See* Compl. Ex. 1 at 18.)

4  Although Plaintiffs might suffer some monetary loss as a result, they do not show that

5  such payments would constitute a "most extreme case" warranting interlocutory review

6  of the Award.  Because Plaintiffs have not made this showing, the court does not find that

7  interlocutory review would be appropriate here.

8    4.  Policy Concerns

9    To further support the argument that their case is exceptional, Plaintiffs argue

10  dismissal would result in delay and greater cost.  (EHW Resp. at 15-16; Nova Resp. at

11  16.)  It is possible that dismissal would cause delay and incur cost.  Plaintiffs do not,

12  however, show why additional delay and cost would result in the most extreme of

13  circumstances and, therefore, warrant interlocutory review.  To do so, Plaintiffs would

14  need show more than mere additional time and expense.   A labor arbitrator is not

15  "chosen simply for . . . his ability to give definitive answers with greater efficiency and

16  speed than the courts." *Stead Motors v. Auto. Machinists Lodge No. 1173*, 886 F.2d

17  1200, 1205 (9th Cir. 1989) (en banc) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-*

18  *Plymouth, Inc.*, 473 U.S. 614 (1985)).  Arbitration in labor disputes has purposes beyond

19  rapid dispute resolution.  Labor "[a]rbitration is a central feature of the collective

20

21  *Brock*, 68 F.3d 1194, 1198 (9th Cir. 1995).  *Brock* involved an arrangement where "workers pay
two percent of their gross salary to [a union fund], which then pa[id] this amount, less minor

22  administrative expenses, to targeted contractors."  *Brock*, 68 F.3d at 1200.  Plaintiffs have
provided the court with no evidence or argument that such an arrangement is at issue here.

ORDER- 28

1  bargaining process," and the "arbitrator under such a scheme serves a function somewhat

2  different from that served by the arbitrator in the commercial context." *Stead Motors*,

3  866 F.2d at 1205.  "Unlike the commercial contract, which is designed to be a

4  comprehensive distillation of the parties' bargain, the collective bargaining agreement is

5  a skeletal, interstitial document." *Id.* (citing *United Steelworkers of Am. v. Warrior &*

6  *Gulf Navigation Co.*, 363 U.S. 574, 578, 580-81, (1960)).  Accordingly, "[t]he labor

7  arbitrator is the person the parties designate to fill in the gaps." *Id.* at 1206.  Because

8  arbitration involves filling in gaps to resolve the dispute, arbitration will require time and

9  resources.  Plaintiffs would need to show that the time and resources required by

10 arbitration are most extreme relative to what might be expected as necessary to resolve a

11 dispute of this nature.  They have not.

12        Moreover, resolution of this dispute has been delayed, in part, due to Plaintiffs'

13 refusal to engage with the Arbitrator.  According to Defendants, Plaintiffs "have refused

14 to engage the Union in substantive discussions concerning the Award and directives by

15 Arbitrator Lankford contained therein." (Mot. at 3.)  Defendants allege Plaintiffs have

16 "steadfastly refused to engage in [conference calls] with Arbitrator Lankford concerning

17 the award." (*Id.* at 4.)  In their briefing, Plaintiffs do not dispute these claims.  (*See*

18 *generally* EHW Resp.; Nova Resp.)  Thus, delay does not appear to be the result of the

19

20

21

22

1  arbitration process itself, but rather the result of Plaintiffs' refusal to engage in the

2  remaining Arbitration process and this litigation.[14]

3          **IV.    CONCLUSION**

4         Based on the foregoing, the court GRANTS the Union's motion to dismiss without

5  prejudice (Dkt. # 10).

6         Dated this 29th day of August, 2014.

7

8

9                          JAMES L. ROBART

10                          United States District Judge

11

12

13

14

15

16

17

18  _____

19     [14] Nova asserts one additional argument.  According to Nova, the Union has conceded

20  that the Arbitration Award is final by pursuing a claim under the  Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., "within the scope of the damages awarded by the Arbitrator" in a related case in the Western District of Washington.  (Resp. Nova at 14.)

21  Nova cites no authority for its argument.  (*See id.*)  In any event, Nova's attenuated and unsupported argument does not overcome the "strong preference for the arbitration of labor-management disputes."  *See, e.g., Serv. Emp. Int'l Union v. St. Vincent Med. Center*, 344 F.3d

22  977, 985 (9th Cir. 2003).

ORDER- 30